THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CASE NO. 4:17CR107.4 |
| | § | |
| EFRAIN VASQUEZ (4), | § | |
| | § | |
| Defendant. | § | |

**REPORT AND RECOMMENDATION OF**
**UNITED STATES MAGISTRATE JUDGE**

On October 18, 2017, the Court held a hearing on Defendant Efrain Vasquez's ("Defendant") Motion to Suppress (Fourth Amendment) (Dkt. 81), the matter having been referred to the undersigned by the Honorable Amos L. Mazzant, III (*see* Dkt. 84). The Government has filed a response in opposition (Dkt. 87), and Defendant filed a reply (Dkt. 88). Defendant challenges the legality of a traffic stop and resulting search of a vehicle in which he was travelling, which occurred on May 17, 2017. *See* Dkt. 81 at 1–4. At the hearing, the Government was represented by Assistant United States Attorney Ernest Gonzalez ("AUSA Gonzalez"), and Defendant was represented by Attorney John Hunter Smith ("Attorney Smith").

According to the motion, Defendant seeks to suppress "all evidence seized or obtained as a result of the unlawful traffic stop." Dkt. 81 at 13. Having considered the motion to suppress, the response, the reply, and the arguments of counsel at the hearing, the Court recommends the motion (Dkt. 81) be **DENIED**.

**I.   EVIDENCE PRESENTED**

At the hearing, the Government offered the testimony of Sergeant Shea Herrington Shaw ("Sergeant Shaw") of the Hopkins County Sheriff's Office ("HCSO"). According to his testimony,

1

Sergeant Shaw was a deputy at the time of the traffic stop and subsequent arrest of Defendant. Sergeant Shaw testified that on May 17, 2017, he made a traffic stop of a vehicle in which Defendant was a passenger. Although Sergeant Shaw initially could not recall the name of the female driver, AUSA Gonzalez refreshed his recollection that the female driver's name was Nilsky Prascobia Ferreira ("Ferreira"), who is a co-defendant. Defendant and Ferreira were the only occupants of the vehicle.

According to Sergeant Shaw, he received information from the Drug Enforcement Administration ("DEA"), through his supervisor, that DEA was conducting a drug trafficking investigation and covertly surveilling the vehicle in which defendant was traveling, as well as another vehicle. Sergeant Shaw received additional information from the DEA that those vehicles were suspected to be transporting illegal drugs, and that they would likely be traveling through the area patrolled by Sergeant Shaw. Hence, according to Sergeant Shaw, the DEA advised him to develop probable cause to stop the suspicious vehicle in which Defendant was a passenger.

Sergeant Shaw testified that after following the suspect vehicle for approximately two miles, he observed the vehicle following too closely to the vehicle in front of it. Sergeant Shaw testified that, based on his experience and training, the rate of travel and distance between the suspect vehicle and the vehicle in front of it would not have allowed sufficient time for the suspect vehicle to stop safely if the front vehicle had stopped. An excerpt of the video recording from Sergeant Shaw's dashboard camera ("Dash-cam") was shown and admitted into evidence. In the video, the suspect vehicle can be seen driving in the right lane of a two-lane highway. During portions of the video, another vehicle can be seen a short distance in front of the suspect vehicle.

Sergeant Shaw testified that after making the stop, he approached the driver's side window and asked Ferreira for her driver's license and insurance information. When Sergeant Shaw asked

Defendant and Ferreira where they were coming from and where they were travelling to, they told him they were travelling from Houston to Little Rock. Sergeant Shaw testified he first became suspicious because they were not traveling in the most direct route between those two cities. Sergeant Shaw further testified that during the stop, Ferreira showed signs of nervousness. He testified that Ferreira's eyes were open very wide and her hands were shaking as she retrieved her driver's license.

Based on Ferreira's nervousness and the indirect route Ferreira and Defendant were travelling from Houston to Little Rock, Sergeant Shaw testified he was suspicious and asked them to step out of the vehicle. Sergeant Shaw further testified that when Defendant opened the passenger side, he noticed an open alcohol container in the door compartment, which he testified is a violation of Texas law. As Defendant Vasquez was stepping out of the vehicle, he removed another open alcohol container from the vehicle and placed it on the ground. Sergeant Shaw then searched the vehicle for more open alcohol containers and found marijuana residue in a cup in the vehicle's center console, at which point he placed Defendant and Ferreira under arrest.

Deputy Kevin Lester then arrived on the scene to assist, and Sergeant Shaw testified that after further searching of the vehicle, he found a hidden compartment containing illegal drugs, as well as a backpack containing a gun, and a large amount of currency. Sergeant Shaw testified that at the time of Defendant's arrest, Defendant was advised of his Miranda rights and transported to HCSO. According to Sergeant Shaw's testimony, Defendant was not interviewed by law enforcement without a lawyer present.

On cross-examination by Defendant's counsel, Sergeant Shaw testified that prior to stopping Defendant's vehicle, his patrol car was positioned east of an overpass eastbound on I-30 that was two lanes on either side, with his back to oncoming traffic. Sergeant Shaw testified that

he followed the vehicle approximately two miles, then turned on the Dash-cam. He then followed the vehicle for approximately one and a half more miles before pulling it over. Sergeant Shaw testified that the only violation he witnessed prior to the stop was "following too close." He also testified that no other vehicles passed the patrol car in that three-and-a-half-mile span. Sergeant Shaw further testified that the police report only referred to following too closely, and made no other allegations regarding unsafe driving.

On redirect examination, Sergeant Shaw testified that during the stop, he asked Defendant how many beers he had drank, to which Defendant responded only that he had "drank alcohol."

The Government offered no further witnesses, and Defendant did not present any evidence to the Court.

## II. ANALYSIS

Defendant challenges the legality of the traffic stop by Sergeant Shaw. Specifically, Defendant argues that Sergeant Shaw's basis for conducting the traffic stop lacked the "requisite objective reasonable suspicion to allow such stop. " Dkt. 81 at 8. Defendant further argues that because Sergeant Shaw was directed to develop probable cause to conduct a traffic stop, he did not have the ability to rely on the "collective knowledge theory" as a basis for reasonable suspicion.

In addition to suppressing all evidence obtained from Sergeant Shaw's initial search, as well as the search of the vehicle that took place after Defendant's arrest, the motion indicates that Defendant also seeks to suppress his "alleged confession" while in custody. *Id*. at 13-14. The Court notes, however, that no arguments were presented at the hearing on the issue of Defendant's statements to law enforcement after his arrest, and Defendant's counsel specifically stated that he was not seeking suppression of the confession at this time. Accordingly, the Court does not address the issue of suppression of Defendant's statements after his arrest in this report.

### A. STANDING

The Government first argues that Defendant lacks standing to challenge the seizure because he did not have a legitimate expectation of privacy in the vehicle in which he was a passenger. However, as noted in Defendant's reply (Dkt. 88), Defendant is challenging not the search of the vehicle, but rather the arrest itself. Defendant argues he has "standing to challenge his illegal seizure and any evidence obtained as a result of that illegal seizure." *Id*. at 2-3. In *Brendlin v. California*, 551 U.S. 249 (2007), the Supreme Court held that a passenger with no ownership interest in a vehicle could challenge evidence discovered as a result of an allegedly illegal traffic stop, because the stop and the detention that followed constituted a seizure of everyone in the vehicle. Since everyone in the vehicle was seized, the passenger's challenge was based on a purported violation of his own Fourth Amendment rights. *See id*. Accordingly, the Court will not recommend that the motion to suppress be denied based on a lack of standing.

### B. SUPPRESSION ANALYSIS

Traffic stops are considered seizures within the meaning of the Fourth Amendment. *U.S. v. Grant*, 349 F.3d 192, 196 (5th Cir. 2003); *see Delaware v. Prouse*, 440 U.S. 648 (1979). The Fourth Amendment protects individuals "against unreasonable searches and seizures." U.S. CONST. amend. IV. The legality of a traffic stop is analyzed under the framework articulated in *Terry v. Ohio*, 392 U.S. 1 (1968), and its progeny. *See Knowles v. Iowa*, 525 U.S. 113, 117 (1998); *U.S. v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). To determine whether a seizure is reasonable, the court considers (1) "whether the officer's action was justified at its inception," and (2) "whether the officer's subsequent actions were reasonably related in scope to the circumstances that justified the stop." *U.S. v. Brigham*, 382 F.3d 500, 506 (quoting *Terry*, 392 U.S. at 19-20).

When considering whether an officer's actions were justified at their inception, the Supreme Court has stated that the Fourth Amendment is satisfied if the officer's actions are supported by reasonable suspicion to believe that criminal activity "may be afoot." *U.S. v. Arvivu*, 534 U.S. 266, 273 (2002) (quoting *Terry*, 392 U.S. at 30). The Supreme Court has specifically instructed that, when reviewing courts make reasonable suspicion determinations, they must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *Id*. (quoting *U.S. v. Cortez*, 449 U.S. 411, 417-418 (1981)). The totality of the circumstances standard allows officers to draw on their own experience and specialized training to make inferences from, and deductions about, cumulative information available to them that might "well elude an untrained person." *Id*. (quoting *Cortez* at 418). An officer may not rely on a mere "hunch" in order to justify a stop. *Terry*, 392 U.S. at 27. However, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Arvivu*, 534 U.S. at 274.

Furthermore, reasonable suspicion can vest through the collective knowledge of the officers involved in the search and seizure operation. "Under the collective knowledge doctrine, it is not necessary for the arresting officer to know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary facts." *United States v. Ibarra*, 493 F. 3d 526, 530 (5th Cir. 2007).

Having considered the totality of the circumstances here, the Court finds that Sergeant Shaw had a reasonable suspicion of criminal activity. Here, Sergeant Shaw testified that he saw the vehicle in which Defendant was a passenger following too closely. Sergeant Shaw followed

the vehicle for approximately three and a half miles observing that, based on his experience and training, the rate of travel and the distance between the suspect vehicle and the vehicle in front of it would not have allowed enough time for the suspect vehicle to stop safely if the front vehicle had stopped.

Defendant's argument, that—based on the directive from DEA to develop probable cause to stop the vehicle—Deputy Shaw had ulterior motives for making the stop, has no bearing on the Court's analysis here. For Fourth Amendment purposes, the traffic infraction, following too closely, provided objective justification for the stop. *United States v. Harris*, 566 F.3d 422 (5th Cir. 2009); *United States v. Martinez-Garcia*, 560 Fed. Appx. 253 (5th Cir. 2014); *Goodwin v. Johnson*, 132 F.3d 162, 173 (5th Cir. 1997). "It is well established that '[s]o long as a traffic law infraction that would have objectively justified the stop had taken place, the fact that the police officer may have made the stop for a reason other than the occurrence of the traffic infraction is irrelevant for purposes of the Fourth Amendment.'" *Harris*, at 434. Defendant's argument that the "pretextual stop" deprived Sergeant Shaw of the ability to rely on the "collective knowledge theory" as a basis for reasonable suspicion is similarly unpersuasive. Here, Sergeant Shaw received information from the DEA regarding the suspect vehicle likely to be travelling through the area. That information, along with his own observations that the vehicle was travelling too closely, is sufficient to form reasonable suspicion.

### III.  CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends that Defendant Efrain Vasquez's Motion to Suppress (Dkt. 81) be **DENIED**.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C.A. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 25th day of October, 2017.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE